Bussell Gr. Hunt, J.
This is a claim to recover damages for injuries alleged to have been suffered by the claimant on April 15,1952, about 6:30 p. m., when he fell from the rear step of a fire truck.
The truck was owned by a volunteer fire company located at Latham in the Town of Colonie, Albany County, and the claimant was a member thereof. It was responding to a fire alarm call and in passing from State highway Boute No. 9 into a town road known as Verner Bo ad in said township it was driven over a saucer shaped drainage ditch which the State’s maintenance crew had fashioned in the intersection at the entrance to the. town road, so that water draining from private land along the State highway, and, from the highway itself, could be carried off. The State’s resident engineer for Albany County testified that in this area there was a ‘ drainage problem ’ ’ because of flat land and that it posed a “maintenance problem ” which was partially solved by the creation of a “ saucer ditch” the depth of which was estimated at from 2 to 6 inches and its width at about 20 inches. It created a hazardous condition in the intersection of the two highways.
When the truck passed over the ditch it bounded violently and the claimant fell from his place on the rear step although there was equipment on the rear of the truck designed to enable those riding there to hold on. One or two others riding with the claimant on the step did not fall. There is no evidence that the claimant had availed himself of the safety devices to maintain himself on the truck. The truck had been proceeding on the State highway at a speed of about 40 miles per hour just *115 before it slowed down and turned off at Verner Road. There is no doubt that its speed had not been reduced sufficiently to avoid the violent action resulting from its passage over the ditch. It is incumbent upon the State to maintain the highway in a reasonably safe condition (Juliano v. State of New York, 190 Misc. 180, affd. 273 App. Div. 936) and this it did not do herein.
The injuries allegedly were to the head and resulted in three operations in connection with the removal of a subdural hemorrhage.
The medical expert called by the claimant was qualified as an eminent specialist in neurological surgery. -He gave it as his unqualified opinion that the condition the claimant suffered from could only have been caused by a trauma or blow to the head. His opinion as to causal relationship between the accident and the condition for which he treated the claimant, therefore, was based upon the assumption that the claimant received a blow on the head.
Neither the claimant nor any other witness testified, however, that the claimant injured his head or received a blow thereto. The State’s proposed findings emphasize this; the claimant has not submitted findings. The claimant testified that on April 15, 1952, while riding on the truck to the fire and passing from the highway into Verner Road he was suddenly propelled upwards about three feet off the rear step of the truck and came down in the roadway and rolled into a ditch on the side of the road. He was driven at once to the office of Dr. McCulloch by the witness, Richard Seymor. The doctor’s records show that he treated the claimant at his office on April 11, 1952, at about 7:00 p.m., and he received a history of the claimant having fallen from a fire truck. The doctor’s examination revealed a laceration and contusion of the left forearm and no other injuries; the head and face were examined and no evidence of injuries was found; the claimant made no complaint of an injury to his head and he was lucid and showed no signs of illness that might have resulted from a head injury.
On April 15, 1952, claimant sought the services of Dr. Boris J. Paul, complaining that when he fell off the truck he had hurt his chest. The doctor’s memory was refreshed by a C-4 medical report he filed with the Workmen’s Compensation Board concerning the claimant. That report was dated July 8, 1952, and shows that on April 15,1952, he examined the claimant concerning an accident occurring on April 11, 1952; that the history he received from the claimant was one of falling off a fire *116 truck; that the objective symptoms were multiple contusions of the chest; there were no complaints of a head injury, there was no ‘ ‘ history or evidence present of a pre-existing injury or disease ”; in answer to the question “ will the injury result in (a) permanent defect? ” the doctor wrote “probably not ” and as to “ (b) facial or head disfigurement ” the doctor wrote “ no”; and there was no lost time from work. He saw the claimant on only the one occasion. The doctor’s records had been lost and he had no recollection of treating the claimant independently of the C-4 medical report. The claimant testified he was at home for three days after the accident and then he worked for the next few months and attended fires as a volunteer fireman. In the first part of October, 1952 the claimant became ill. He suffered from dizziness, he was confused and this was followed by hospital confinements terminating in the cranial operations of October 21 and subsequent.
The confusion regarding* the date of the accident is difficult to explain. The evidence shows that the accident was first brought to the State’s attention over one and one-half years later when claimant’s counsel made a formal application for leave to file a late claim pursuant to section 10 of the Court of Claims Act. The notice of motion was dated November 27, 1953, and the supporting papers erroneously recited that the accident happened on April 15, 1952, and that the claimant was continuously physically disabled thereafter. Thus, the confusion arose, apparently.
The difficulty in the claimant’s case lies in the failure to connect the accident with the serious condition for which he was treated six months later. His medical expert found causal relationship upon the assumption there was a trauma to the head. The assumption is not supported by the evidence. There was no evidence of trauma to the head. Causal connection between the accident and the injuries, for which recovery is sought, was not established (Matter of Bonomi v. Poirier & McLane Corp., 1 A D 2d 302, 305).
The claim must be dismissed.
The foregoing constitutes the written and signed decision upon which judgment may be entered (Civ. Prac. Act, § 440).
Let judgment be entered accordingly.